## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### Houston Division

| | | |
|---|---|---|
| SANTA HAFIZEE | § | Civil Action No. 4:18-cv-15 |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | <u>Jury Trial Demanded</u> |
| | § | |
| SAN JACINTO COLLEGE | § | |
| | § | |
| *Defendant* | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

Plaintiff Santa Hafizee files this suit against San Jacinto College.

## <u>PARTIES</u>

1.  Plaintiff, Santa Hafizee, is Muslim Female of Hispanic origin and a resident of Harris County, Texas. She was employed by Defendant, San Jacinto College as a licensed peace officer.

2.  Defendant, San Jacinto College is a public community college system that runs the San Jacinto College Police Department and may be served with process by serving Chancellor Brenda Hellyer at 4624 Fairmont Parkway, Suite 200, Pasadena, Texas77504

**1**

## JURISDICTION AND VENUE

3.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 28 U.S.C. §1331, 28 U.S.C. § 1337, 28 U.S.C. §1343, 28 U.S.C. 1367, Title VII of the Civil Rights Act - 42 U.S.C. Chapter 21; 42 U.S.C. §2000e-5(f)(1) (unlawful employment practices-Title VII Enforcement); Civil Rights Act of 1991-42 U.S.C.1981, 42 U.S.C. § 1981a; and 42 U.S.C. § 1983.

4.   Plaintiff invokes this Court's jurisdiction pursuant to Rule 18(a) of the Federal Rules of Civil Procedure and 28 U.S.C. 1367 to hear and adjudicate claims arising out of the transactions set forth herein that violate rights and duties established by the laws of the State of Texas.

5.   This Court has supplemental jurisdiction under 28 U.S.C. § 1367 (a) in that the claims asserted also fall under the Tex. Labor Code Ann. Chapter 21.

6.   All the claims asserted in this action arose within this District and the discrimination and damages alleged occurred entirely in this district. Venue in this action is proper under 29 U.S.C. §2617 and 28 U.S.C. § 1391.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.   Prior to filing this action, Plaintiff timely filed her initial Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within the appropriate number of days on August 17, 2017, her

2

written charge asserting Defendant's religious discrimination, sex discrimination, hostile work environment, and retaliation where it is reasonably expected that during the EEOC investigation Defendants hostile work environment would be revealed. *Federal Exp. Corp. v. Holowecki*, 552 U.S. 389 (2008); *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 577-78 (5th Cir. 1993); *Martinez v. Potter*, 347 F.3d 1208 at 1210 (10th Cir. 2003); *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2nd Cir. 2003).

8.   Plaintiff has filed this action subsequent to the expiration of ninety (90) days from the date of receiving her right to sue letter from the EEOC and within two (2) years after Defendant willfully violated Plaintiff's rights. Plaintiff received her right to sue letter from the EEOC with a mailing date of October 5, 2017. Plaintiff has exhausted all administrative remedies; therefore all conditions precedent to the Plaintiff maintaining this civil action have accrued, occurred, or been waived. *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

9.   Although not required by law, Plaintiff appealed her termination to San Jacinto College Human Resources Department where her termination was upheld.

10.   All conditions precedent to Plaintiff bringing her claims against Defendant for sex discrimination, religious discrimination, hostile work environment, and retaliation have either been performed, have occurred, or have been waived.

## NATURE OF THE ACTION

11.   Plaintiff brings this action seeking damages and injunctive relief against the named defendants for actions done, under color of law, with the intent and purpose of depriving Plaintiff of rights secured under the United States Constitution and the Texas Constitution, as well as willful violations of federal and state statutes, and for neglecting or willfully refusing to prevent such violations.

## FACTS COMMON TO ALL COUNTS

12.   Santa Hafizee is licensed peace officer in Texas. Her first job as a peace officer was for the San Jacinto College Police Department and she was hired in March 2016 as a campus police officer.

13.   Santa Hafizee is Muslim woman of Hispanic descent. She has a husband and four daughters.

14.   Defendant San Jacinto College employs licensed peace officer as part of their on campus San Jacinto Police Department. San Jacinto College has more than two thousand employees among its five sites.

4

15.   San Jacinto Police Department has approximately 35 employees that are licensed peace officers. Officer Hafizee was the only Muslim peace officer. There were approximately five female police officers of her rank and three female police officers ranked above her. She was never put on the same shift as another woman.

16.   Officer Hafizee and two other male police officers were hired in the same hiring class and all three were put into field training with field training officers (FTO).

17.   Training of newly hired police officers consisted of a rotation through field training officers in order to get hands on experience and to learn the specifics of each campus.

18.   She completed the first rotation of FTO training without incident and received high evaluations. Part of the training was she was put into a conference room and told to read through the employee policy handbook.

19.   At no time did she or the other newly hired police officers receive specific training on gender, race, or religious discrimination.

20.   In her second rotation, Officer Hafizee was assigned to Officer Nguyen Phan. He would continuously brag about sleeping with female students. He would take her on patrol specifically to point out his sexual exploits or to encounter students he was interested in. On one occasion, they were walking

through the campus library when he hid behind a pillar and made Officer

Hafizee hide because he saw a female student he had "slept with but then had to

cut off."

21.    Officer Hafizee was concerned that she was not getting any training and

spoke to Sgt. James Jackson, her then supervisor, about Officer Phan. She told

him that Officer Phan's constant talk about his sex life made her uncomfortable

and that he continued even though he knew it made her uncomfortable. She

asked him how she could file a complaint. Sgt. Jackson told her to do a written

complaint. She made the written complaint.

22.    Chief Bruce Campbell, the head of the Police Department and the ultimate

authority over Officer Hafizee, reviewed the complaint. He stated that he was

not going to punish Officer Phan because he was young and "something like

this" would ruin his career. He instructed that he would talk to Officer Phan and

tell him to not do it again. She was led to believe that it was considered a sexual

harassment complaint by the Department and that Officer Phan was issued a

warning.

23.    After she made that complaint she was reassigned but was never assigned an

FTO for further training. The other FTO certified officer stated to the

Department that he did not want to train her because his wife did not want him

alone with a woman in the patrol car. She was sent with different officers to

partner up on patrol but the officers would make it known to her that they were not there to train her and to not ask them questions. She was never paired with another female officer.

24.    On several occasions she was paired with Officer Larry Sparks. Officer Sparks stated openly that he was hoping the college would have a "Black Lives Matter Protest" so he could run over the protesters. He would also tell her how he believed all Muslims were terrorists and raped babies. He knew she was Muslim. She felt unsafe with Officer Sparks and complained to Lt. Patrick Lollie and Sgt. Nathaniel Vitals. Both supervisors questioned her about the situation. She was told that she could either be reassigned to another San Jacinto College campus or she could file a complaint, and in that instance, she would have to remain on the campus she was at with Officer Sparks while the claim was investigated. She chose to be reassigned because she feared Officer Sparks would refuse to back her up as a police officer or do something that would put her into danger.

25.    Although she was told she would be reassigned, Sgt. Vitals would only arrange the schedule so she would not ride in the same car as Officer Sparks. Officer Hafizee was not moved to a different location. During this time, she was so worried about Officer Sparks, she would always try to be on the opposite sides of the campus as him. Officer Sparks was never asked about his behavior

**7**

or questioned about what he had said. He was never given a warning or corrected in anyway. Officer Hafizee made it known to her supervisors that Officer Sparks' statements about Muslims were offensive to her and that she felt personally threatened by them. She was told by her supervisors that Officer Sparks was a good person, it was just talk, and she had nothing to worry about.

26. In June, all licensed officers of San Jacinto College PD were told that they would have to all qualify with their weapons in order to get everyone on the same schedule. Around June 6, 2016, she and other officers were ordered to report to the Les Early Firearms Training Center in Pasadena, Texas. The officer in charge of firearm qualifications was Sgt. Vitals. Officer Hafizee was still on field training status throughout June.

27. Officer Hafizee was the first to arrive. The training officers had left the range to get lunch. Soon after Officer Darren Darden and Officer Rita Regalado arrived. Officer Regalado stated she was told by Sgt. Vitals to go wait at the outdoor gun range and watch the Department's equipment.

28. While waiting, Officer Darden confessed that he always had trouble removing his slide and was worried he would be asked to do it during qualifying. Officer Regalado attempted to help him but was having trouble with the slide on her firearm. They asked Officer Hafizee about her gun. She was carrying a Glock 23 .40 caliber assigned to her by San Jacinto Police

**8**

Department. They ask her to demonstrate her slide. She pointed the gun away and down safely. When she moved the slide, the gun accidentally discharged.

29.   Officer Hafizee asked Officer Darden and Officer Regalado what she should do as they had more experience. Officer Darden stated that he did not see anything happen and Officer Regalado did not say anything.

30.   Officer Hafizee was still in training and was attending a qualifying training course. According to San Jacinto Police Department Policy, she did not have to report an accidental discharge if it occurred during training.

31.   When the rest of the assigned officers arrived and the training officer, she successfully completed her firearms qualifications. Officer Hafizee did not tell her supervisor about the incident, nor did Officer Darden or Officer Regalado.

32.   Officer Hafizee completed her mandatory training time on July 5 and was given above average ratings on her final evaluation. The two other officers, both male, who were in her hiring class, also completed their training at the same time. Officer Hafizee was only given one FTO assignment and then was left on her own. The other new officers were given full training with FTOs for whole training period and were given training on all the different areas of San Jacinto College Police Department.

33.   After her training period, Officer Hafizee was assigned to third shift on North Campus. Her supervisors were Sgt. Vitals and Lt. Lollie.

34.   After the training period, Officers patrol in solo units at their assigned campuses. The job duties include patrolling the campus, checking buildings, traffic and parking enforcement, and general crime prevention.

35.   Sometime after Officer Hafizee completed her training and was assigned to North Campus, an ATM on the Central Campus was robbed. Soon after the incident, Sgt. Vitals went to each officer on the night shift to speak to them specifically about how to respond in such a situation. Sgt. Vitals told her that if a burglary or robbery occurred while she was on duty, she was to go hide at the tennis courts and call for outside law enforcement such as the constables or sheriff's deputies. He instructed her to hide on the other side of campus until an outside agency arrived. Officer Hafizee protested to him that she was a police officer and she was not going to hide, but rather she would do her duty as required. Sgt. Vitals did not give the same instructions to the male officers under his command.

36.   That same week, Sgt. Vitals requested that a second officer always be assigned with Officer Hafizee because she was female. Officer Hafizee protested and stated that she was a police officer and should be treated the same as the other officers.

37.   A second officer was never assigned with Officer Hafizee but Sgt. Vitals continued to treat her differently than the other Officers. He would not answer

her calls for assistance and Officers from other campuses would have to be told to shift over to check on her by instruction of Sgt. Vitals. It was understood by the other Officers that they were being sent to check on her because she was a woman.

38.   On one occasion, a building alarm was going off on North Campus. She called it in to Sgt. Vitals but he did not respond. She then called the Constables' office and a Deputy Constable responded. Together they swept the building. She reported to dispatch that her and the Constables were sweeping the building. During the sweep, Sgt. Vitals sets off the radio alarm to hail her to call in, breaking protocol and endangering Officer Hafizee and the Deputy Constables.

39.   In other incidents when she was investigating a suspicious vehicle, he admitted to dispatch that he turned off his radio so as not to hear Officer Hafizee.

40.   Officer Hafizee complained to Lt. Lollie about how she felt she was being singled out because she was female. She also told him about being told to hide if anything happened on campus and how he would ignore her calls. Other officers complained that they caught him sleeping and would not be able to answer their questions. Lt. Lollie stated that each officer should write their complaint down and submit it. Officer Hafizee did, as did other officers.

41.   The investigation into Sgt. Vitals lasted about seven months. Sgt. Vitals remained Officer Hafizee's supervisor but it was understood that if she had administrative issues, she should discuss them with Lt. Lollie.

42.   During the investigation into Sgt. Vitals, Officer Hafizee met with Chief Bruce Caldwell along with other Officers that filed complaints against Sgt. Vitals. Chief Caldwell told her that he was aggravated and upset about the complaints they had filed because it was a distraction to him from doing his job of running the department. The Officers expressed concerned that Sgt. Vitals instructed them to help deputies or constables when they are working in and around campus and had forbade them from conducting traffic stops. Chief Caldwell stated to the Officers that San Jacinto College did not pay the officers to be officers and the only thing they were paid to do was check the buildings. He reiterated that if something were to happen, they should look the other way.

43.   After the complaints were filed, Officer Hafizee continued to do her job and shift under Sgt. Vitals but it was understood that any issues she had, she should speak directly to Lt. Lollie.

44.   Around October 2016, Lt. Lollie started to spend more time on Officer Hafizee's patrol. It started as check ins and evolved him accompanying her on her patrol for two to three hours a night. She knew Lt. Lollie was married and he knew she was married.

45.   About a month later, he would bring up sexual subjects in conversation. Officer Hafizee would try and change the subject and ask him to stop. He would taunt her by calling her a chicken, inferring she was a coward for not accepting his advances.

46.   Lt. Lollie would refer to Officer Hafizee as his "work wife" and would try and make her jealous by telling her of other officers he had affairs with when he worked at other departments and agencies. Officer Hafizee made it clear to Lt. Lollie that she was not his work wife and that she did not want to have an affair.

47.   Officer Hafizee felt as if she was trapped because Chief Caldwell made it clear that she was not to make any more complaints, it was clear any complaints she did make would not be handled properly, and Lt. Lollie was her only supervisor. She felt compelled to be polite to Lt. Lollie because he was her supervisor and had power in the department to give her evaluations. She hoped that she could work for two years and then apply to be a Deputy. She dreaded her interactions with Lt. Lollie but thought they were inevitable.

48.   In December 2016, Lt. Lollie sent her a text to her personal cell phone. Officer Hafizee had not conversed with him. He texted her a picture of his naked torso. She did not respond to the text and tried to ignore it.

49.   The next time she was on shift Lt. Lollie found her while she was on patrol. He apologized for sending the picture and told her it would never happen again.

After a month, Lt. Lollie started to resume attempting sexual banter, trying to make her jealous of his past lovers and other female officers, and propositioning her for an affair.

50.   Officer Hafizee never had an affair with Lt. Lollie. She dreaded seeing him on shift and would try and avoid him whenever possible.

51.   In June 2017, Officer Hafizee put in for and received a position as department CPR instructor. She was happy for the opportunity. After she was named as part of the team, Lt. Lollie made it known to her that the only reason she got the position is that he got it for her. He stated to her that she should be appreciative to him for the promotion.

52.   In June, all San Jacinto College Police Department personnel had to requalify for CPR and first aid certification. Sgt. Vitals approached her on four separate occasions asking for the answers to the written exam. She refused each time. Later when the written exam was given, Officer Hafizee observed Sgt. Vitals cheating off other people's test answers and discussing test answers on breaks. She told the other CPR/first aid officer, Officer Jesse Mendoza to be careful if people ask him for the answers to the test. Lt. Gamboa overheard and ordered Officer Hafizee to state who asked her for test answers. She told her how Sgt. Vitals had approached her about the test answers and she observed Sgt. Vitals cheating on the exam. Lt. Gamboa told Officer Hafizee to file a

complaint because Lt. Gamboa wanted the internal certification program to succeed. A complaint was filed against Sgt. Vitals and an investigation was opened.

53.    On July 6, 2017, Officer Hafizee was approached by Sgt. James Jackson. He stopped her in the office and took her into an interrogation room. He asked her questions about the gun range qualifications the previous summer. She answered his questions and told him about the accidental discharge. He told her to make her statement in writing, which she did. He was not in her chain of command nor was he an internal affairs officer. He did not have any internal affairs investigative authority.   Sgt. Jackson stated to her that he was investigating whether her department issued firearm malfunctioned.

54.    On July 9, 2017, Officer Rita Regalado filed a complaint against Officer Hafizee due to the accidental discharge. The July 6, 2017 questioning by Sgt. Jackson was alleged to be triggered by this July 9, 2017 letter, even though the letter occurred after the investigation was begun.

55.    On August 8, 2017, Officer Hafizee was informed that a complaint was filed against her and an internal affairs investigation had begun. She was called into an internal affairs investigation conducted by Lt. Lollie and Lt. Johnston. She explained the incident to them, the policy about being under training, and her understanding of the policy. She then stated to them that Sgt. Jackson had

15

already talked to her. Lt. Johnston said that Sgt. Jackson had recorded the interview and they had reviewed it. They refused to allow her to review the recording.

56.   On August 11, 2017, Officer Hafizee was terminated by Chief Bruce Caldwell for making misleading statements during the course of an investigation. Chief Caldwell told her when she was fired that every time she made a complaint; she was wasting his time and taking his focus away from important issues concerning the department. The investigations into her complaints about Sgt. Vitals were dropped that week.

57.   Officer Hafizee immediately appealed her termination to San Jacinto College Human Resources. On September 21, the human resources department sustained the termination stating she was terminated for failure to report the accidental discharge.

58.   Chief Bruce Caldwell personally gave Officer Hafizee a dishonorable discharge on her Texas Commission on Law Enforcement Separation of Licensee (F-5) Form, so that she could not get further work as a law enforcement officer.

## PROTECTED CLASS MEMBERSHIP

59.   This lawsuit is brought under 42 U.S.C. §2000 et. seq. (Title VII) and its counterpart 42 U.S.C. §1981. Title VII and §1981 prohibit employers from

discriminating "against any individual with respect to their compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin. See: 42 U.S.C. §2000e-2(a).

60. Plaintiff identifies that she is a part of the following protected classed:

a. Sex – Female

b. Religion – Muslim

c. Race – Hispanic

d. Sexual harassment and hostile work environment

e. Filed complaints with her chain of command concerning sexual harassment and hostile work environment. Filed complaints with the EEOC.

f. Retaliation prohibited.

g. Other applicable laws.

61. Plaintiff identifies that she is a member of the protected classes identified in Section above as defined within the Texas Commission on Human Rights Act (TCHRA) which has been codified into Chapter 21 of the Texas Labor Code and other Texas Statutes.

## CAUSES OF ACTION

62. The allegations contained above are incorporated by reference as if fully set forth herein.

## I. Count One – Sex-Gender Discrimination in the San Jacinto Police Department as part of San Jacinto College

63.   Plaintiff held the position of licensed police officer with the San Jacinto College Police Department as part of San Jacinto College. Plaintiff held the position for approximately seventeen months.

64.   Plaintiff received outstanding evaluations and no write ups during this period.

65.   During the period Plaintiff was employed by San Jacinto Police Department, there were nine woman employed as licensed peace officers for San Jacinto College.

66.   Throughout her employment, Plaintiff saw that male employee police officers of Defendant received better or preferable treatment than female employee police officers, particularly when it came to training, treatment from supervisors, and the expectations of employment.

67.   Male employee police officers that behaved contrary to policy were not disciplined because of the preferable treatment.

68.   Defendant does not enforce its written policy equally among all its employees.

69.   On the rare occasion when Male employees are disciplined it means nothing because they still receive raises and other benefits as if nothing happened.

70. Defendant fosters an environment where male employees are valued over female employees and male employees are allowed to harass, disparage, and create an unsafe environment for female employees.

71. Plaintiff has brought this sex-gender discrimination up with Defendant; however, Defendant took no steps to stop the sex-gender discrimination.

72. Plaintiff suffered adverse employment action when Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, trumped up an investigation for the purpose of terminating her and taking coordinate action to silence her complaints about the illegal and unconstitutional working conditions of the San Jacinto College Police Department. Each used their positions of authority to create perpetuate sex-gender discrimination.

73. Plaintiff believes that the Defendant along with Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, has and continues to discriminate against her because of her being a Female, including actively preventing her from receiving gainful employment as a law enforcement officer after her termination.

74. Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, intentionally and willfully discriminated against Plaintiff and other female employees.

**19**

75.   The unlawful employment practices complained of herein were intentional.

76.   The unlawful employment practices complained of herein were done with malice or reckless indifference to the protected rights of Plaintiff and other female employees.

77.   As a result of Defendant's intentional discriminatory conduct, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with the loss of her employment.

78.   As a result of Defendant's discriminatory conduct, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Because of these losses Plaintiff seeks compensatory damages.

79.   Defendant's actions were done with malice and/or with reckless indifference to Plaintiff's protected rights. Plaintiff is therefore entitled to punitive damages.

80.   Plaintiff also seeks reasonable attorneys' fees, court costs, and including reasonable expert fees.

## II.   *Count Two –Discrimination based on religion in the San Jacinto Police Department as part of San Jacinto College*

20

81.  Plaintiff held the position of licensed police officer with the San Jacinto College Police Department as part of San Jacinto College. Plaintiff held the position for approximately seventeen months.

82.  Plaintiff received outstanding evaluations and no write ups during this period.

83.  During the period Plaintiff was employed by San Jacinto Police Department, there were no other Muslims employed as licensed peace officers for San Jacinto College.

84.  Throughout her employment, Plaintiff saw that non-Muslim employee police officers of Defendant received better or preferable treatment than female employee police officers, particularly when it came to training, treatment from supervisors, and the expectations of employment.

85.  Non-Muslim employee police officers that behaved contrary to policy were not disciplined because of the preferable treatment.

86.  Defendant does not enforce its written policy equally among all its employees.

87.  On the rare occasion when non-Muslim employee are disciplined it means nothing because they still receive raises and other benefits as if nothing happened.

88.   Defendant fosters an environment where non-Muslim employees are valued over Muslim employees and non-Muslim employees are allowed to harass, disparage, and create an unsafe environment for Muslim employees.

89.   Plaintiff has brought this religious discrimination up with Defendant; however, Defendant took no steps to stop the religious discrimination and harassment based on the Plaintiff's religious affiliation.

90.   Plaintiff suffered adverse employment action when Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, trumped up an investigation for the purpose of terminating her and taking coordinate action to silence her complaints about the illegal and unconstitutional working conditions of the San Jacinto College Police Department. Each used their positions of authority to create perpetuate religious discrimination.

91.   Plaintiff believes that the Defendant along with Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, has and continues to discriminate against her because of her being a Muslim, including actively preventing her from receiving gainful employment as a law enforcement officer.

92. Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, intentionally and willfully discriminated against Plaintiff and any potential Muslim employees.

93. The unlawful employment practices complained of herein were intentional.

94. The unlawful employment practices complained of herein were done with malice or reckless indifference to the protected rights of Plaintiff and other potential Muslim employees.

95. As a result of Defendant's intentional discriminatory conduct, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with the loss of her employment.

96. As a result of Defendant's discriminatory conduct, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Because of these losses Plaintiff seeks compensatory damages.

97. Defendant's actions were done with malice and/or with reckless indifference to Plaintiff's protected rights. Plaintiff is therefore entitled to punitive damages.

98.   Plaintiff also seeks reasonable attorneys' fees, court costs, and including reasonable expert fees.

### III.   Count Three – Hostile Work Environment in the San Jacinto Police Department as part of San Jacinto College

99.   On almost a day-to-day basis Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, and other supervisors, routinely gave orders in direct opposition with the written policies of Defendant so they may treat one employee differently than other employees.

100.  Although Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, and other supervisors, knew of the hostile work environment, NO remedial action to stop the hostile work activities and prevent those types of unlawful activities from occurring in the future was taken by all level of the ranks of the San Jacinto Police Department.

101.  Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, willingly, knowingly and intentionally allowed the hostile work environment to exist.

102.  Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, by its acts or failure to act herein supported the ongoing hostile work environment.

103.  The unlawful employment practices complained of herein were intentional.

104. The unlawful employment practices complained of herein were done with malice or reckless indifference to the federally protected rights of Plaintiff and other female employees.

105. As a result of Defendant's intentional discriminatory conduct, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with the loss of her employment.

106. As a result Defendant's discriminatory conduct, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Because of these losses Plaintiff seeks compensatory damages.

107. Defendant's actions were done with malice and/or with reckless indifference to Plaintiff's protected rights. Plaintiff is therefore entitled to punitive damages.

108. Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

**IV.   *Count Four – Retaliation in the San Jacinto Police Department as part of San Jacinto College***

109. The first time Plaintiff made a complaint about the Defendant's unlawful employment practices, Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, began to treat her differently, including mandating that she receive a separate training regimen than the other male employees.

110. After she uncovered cheating by Sgt. Nathaniel Vitals to receive state mandated certifications as part of his peace officer license, Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, initiated a false and misleading investigation for the purposes of terminating Plaintiff as a police officer.

111. Plaintiff strongly believes as a result of her being a Muslim, Hispanic, Female, having complained about the San Jacinto Police Department's unlawful treatment, is why she has been subjected to the discriminatory and disparate treatment outlined herein.

112. Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, does not apply Defendant's policies evenly for all employees and, in fact, misapplied them against Plaintiff in order to effectuate her termination.

113. Defendant and others discriminated and retaliated against Plaintiff by subjecting Plaintiff to discriminatory remarks, jokes, and innuendos concerning

her faith and sex even after she made complaints about such conduct, requested that the conduct cease, and took administrative action about the conduct. It is because of the actions she took that the Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, effectuated her termination.

114.  But for Plaintiff being a member of one or more of the Protected Classes as outlined above Plaintiff would not have suffered retaliation.

115.  Defendants retaliation against Plaintiff during her employment included but is not limited to:

   a.   Defendant and its supervisors doing whatever they want to regardless of the law;

   b.   Defendant and its supervisors doing whatever they want to regardless of legal counseling;

   c.   Defendant and supervisors uttering dictums in opposition to written policy;

   d.   Defendant and supervisors treating some employees differently than all other employees;

   e.   Defendant, its supervisors and others harassing Plaintiff;

   f.   Defendant, its supervisors and others uttering disparaging remarks at Plaintiff;

   g.   Defendants, its supervisors and others yelling at Plaintiff;

h.   Defendant, its supervisors and others being insubordinate to Plaintiff;

i.   Defendant refusing to train Plaintiff as mandated by law because Plaintiff is a member of one or more of the Protected Classes as outlined above;

j.   Defendant, its supervisors terminating Plaintiff.

116. Most, if not all, of the acts complained of within this Complaint were retaliatory in nature and directed toward Plaintiff, because Plaintiff belongs to one or more of the Protected Groups as outlined above.

117. It is unlawful to retaliate against an individual for opposing discriminatory employment practices or for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or litigation under the ADEA, Title VII and/or the Texas Labor Code.

118. Defendant further violated Plaintiff's civil rights by taking adverse actions against her in response to her complaints about the discriminatory working conditions that ultimately resulted in Plaintiff being terminated.

119. During the course of Plaintiff's employment, Defendant, acting through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals and others, in a continuous course of conduct, discriminated against Plaintiff in the terms, conditions and privileges of her employment due to her religion, sex and due to retaliation for having participated in an United States Equal Employment Opportunity Commission proceeding and/or for

having opposed conduct which she had a good faith belief was discriminatory on the basis of religion, sex and retaliation.

120. Defendants, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals and other supervisors and/or employees, in a continuing course of conduct, subjected Plaintiff to retaliation and discrimination in the terms, conditions, and privileges of her employment in the form of her F-5 form filed with TCOLE, in retaliation for her filing a charge of discrimination with the EEOC and/or participating in a proceeding with that agency against her employer and/or because she opposed discrimination and retaliation at Defendants' place of employment. Plaintiff also asserts that the Defendant has engaged in religious discrimination, sex discrimination, retaliation, and a hostile work environment by using those items to deny Plaintiff certain benefits of employment.

121. Plaintiff further alleges that Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, engaged in the conduct described herein with malice or reckless indifference to the protected statutory rights of its employees, including Plaintiff.

122. Plaintiff further alleges that Defendant's religious discrimination, sex discrimination, hostile work environment, and retaliation conduct in violation of Title VII and is willful under Title VII.

123.  The unlawful employment practices complained of herein were intentional.

124.  The unlawful employment practices complained of herein were done with malice or reckless indifference to the protected rights of Plaintiff and to benefit other male employees of Defendant.

125.  As a result of Defendant's intentional discriminatory conduct, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with the loss of her employment.

126.  As a result of Defendant's discriminatory conduct, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Because of these losses Plaintiff seeks compensatory damages.

127.  Defendant's, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, actions were done with malice and/or with reckless indifference to Plaintiff's protected rights. Plaintiff is therefore entitled to punitive damages.

128. Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

## V. Count Five – Wrongful termination as police officer for San Jacinto College Police Department

129. Defendant has no legitimate business reason to terminate Plaintiff.

130. Plaintiff received great performance reviews and no disciplinary right ups while employed with San Jacinto College.

131. A review of Defendant's termination procedures, the internal affairs investigation, and the policies established by the Defendant, do not follow established guidelines and it can only be surmised that the Defendant targeted Plaintiff because of the complaints she made against the police department.

132. Defendant did not take into account individual qualifications as a factor when terminating Plaintiff.

133. Defendant did consider individual's gender and religion when choosing to terminate Plaintiff as a police officer of the San Jacinto College.

134. Defendant did consider individual's participation in filing complaints against Defendant for unlawful employment practices when choosing to terminate Plaintiff as a police officer of the San Jacinto College.

135. Defendant tried several methods in an attempt to force the Plaintiff to resign, including through intimidation, continual workplace harassment, and the creation of a hostile work environment.

136. At all times material herein Plaintiff maintained impeccable qualifications for the job she was employed, including seeking online training and maintaining her licensing qualifications.

137. Plaintiff did not receive any justified discipline while employed with Defendant.

138. Plaintiff was terminated as a police officer under the guise of a disciplinary procedure that had no bases in policy or procedure set by Defendant.

139. Plaintiff was terminated because of her participation in protected activities by reporting Defendants unlawful employment practices to Defendant and the U.S. Equal Employment Opportunity Commission.

140. Plaintiff was terminated because she is a Muslim, Hispanic, Female.

141. Plaintiff was wrongly terminated.

142. The unlawful employment practices complained of herein were intentional.

143. The unlawful employment practices complained of herein were done with malice or reckless indifference to the state and federally protected rights of Plaintiff and other female employees of Defendant.

144. As a result of Defendant's discriminatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with his employment.

145. As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Because of these losses Plaintiff seeks compensatory damages.

146. Defendant's actions were done with malice and/or with reckless indifference to Plaintiff's protected rights. Plaintiff is therefore entitled to punitive damages.

147. Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

## VI.   Count Six – Negligence and negligence per se in San Jacinto College

148. Defendant owed the following legal duties to Plaintiff:

a) Duty to use ordinary care in providing a reasonably safe workplace. *Kroger v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006);

b) Duty to use ordinary care in supervising an employee's activities. *Farley v. MM Cattle Company*, 529 S.W.2d 751, 754 (Tex.1975);

c) Duty to use ordinary care in providing employees adequate help in the performance of work. *National Convenience Stores Inc. v. Matherne*, 987 S.W.2d 145149-50 (Tex. App.—Houston [14th Dist.] 1999);

d) Duty to use ordinary care in hiring employees. *Ft. Worth Elev. Co. v. Russell*, 70 S.W.2d 397, 401 (Tex. 1934);

e) Duty to use ordinary care in supervising its employees. *Mackey v. U.P. Enterprises, Inc.*, 935 S.W.2d 446, 459 (Tex. App.--Tyler 1997, denied); and

f) Duty to use ordinary care in training its employees. *Allsup's Convenience Stores v. Warren*, 934 S.W.2d 433, 437 (Tex. App.—Amarillo 1996, denied).

149.  Defendant breached the legal duties it owed to Plaintiff as follows:

a) Defendant does not provide a safe workplace free from harassment, sex discrimination, religious discrimination, hostile work environment, retaliation and emotional distress;

b) Defendant does not use ordinary care in supervising an employee's activities as evidenced by the multiple claims against Plaintiff's supervisors and others continued outrageous conduct which Defendant allows to continue on a day-to-day basis;

c) Defendant does not provide employees adequate help in the performance of work as is evidenced by the Plaintiff being denied help and backup while on the job;

d) Defendant does not provide ordinary care in hiring employees as Defendant continually hires employees without the proper experience, then fails and refuses to train the new hires, all the while expecting them to meet certain levels; further Plaintiff's hiring methodology does not follow well-grounded human resource policies;

34

e) Defendant does not use ordinary care in supervising its employees as evidenced by the multiple claims against Plaintiff's supervisor and others continued outrageous conduct which Defendant allows to continue on a day-to-day basis contributing to a hostile work environment;

f) Defendant does not use ordinary care in training its employees as Defendant has failed and refused to train employees concerning harassment, age discrimination, race discrimination, religious discrimination, sex discrimination, hostile work environment, retaliation, diversity, EEOC policies, the written policies in Defendants Employee Handbook and other areas as well as not meeting state mandated training standards for licensed peace officers; this failure is compounded by the fact that Defendant does not train its supervisors in how to handle situations, how to apply and enforce the written polices in Defendants Employee Handbook, and other areas however Defendant expects its supervisors to perform these functions without training which only leads to violations of employees' rights.

150.  As a result of Defendant's negligence, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals, outlined herein Defendant has a) discriminated against Plaintiff, b) caused the existence of an ongoing hostile work environment and c) subjected Plaintiff to harassment and retaliation.

151. As a further result of Defendant's negligence outlined herein Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, and Sgt. Nathaniel Vitals and others have discriminated against Plaintiff when they applied and enforced Defendant's written policies on Plaintiff differently than their application and enforcement of the same policy on other employees of Defendant, which caused Plaintiff to suffer adverse employment events.

152. As a further result of Defendant's negligence outlined herein Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, Sgt. Nathaniel Vitals and others have discriminated against Plaintiff because of Plaintiff's sex, religion, and other protected class status.

153. As a further result of Defendant's negligence outlined herein, Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, Sgt. Nathaniel Vitals and others have violated 42 U.S.C. §2000, et. seq., 42 U.S.C. § 1981, 42 U.S.C. §§12111-12117; 42 U.S.C. §§ 12201-12213; Texas Commission on Human Rights Act codified into Chapter 21 of the Texas Labor Code.

154. As a further result of Defendant's negligence outlined herein Defendant, through Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, Sgt. Nathaniel Vitals and others have committed various torts against Plaintiff.

155. Plaintiff seeks unliquidated damages within the jurisdictional limits of this court.

156. Defendant's unlawful conduct complained of by Plaintiff herein was done with malice or reckless indifference to the rights of Plaintiff which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section §41.003(a).

157. Plaintiff also seeks reasonable attorneys' fees and court costs including reasonable expert fees.

## VII.  Count Seven – Vicarious liability respondent superior – ratification in the workplace

158. The acts of Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, Sgt. Nathaniel Vitals and others supervising employee, were performed while in the employment of Defendant and were within the course and scope of that employment or within the authority delegated to the employee.

159. Therefore the conduct of Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, Sgt. Nathaniel Vitals and others, supervising employee toward Plaintiff as outlined herein was performed while in the employment of Defendant.

160. Further the conduct of Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, Sgt. Nathaniel Vitals and others, supervising employee toward Plaintiff as outlined herein was approved by Defendant as Defendant took no

steps to change, alter, stop or modify said conduct and even conducted a faux investigation into the termination of Plaintiff and condoned the discriminatory actions of the supervisors.

161. At the time of the conduct of Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, Sgt. Nathaniel Vitals and others, supervising employee, was acting on Defendant's behalf.

162. After the events complained of, Defendant was fully aware of Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, Sgt. Nathaniel Vitals and others, supervising employee, and approved them by Defendant's acts or failure to act.

163. Defendant approved Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, Sgt. Nathaniel Vitals and others, supervising employee's acts with intent to validate them.

164. Therefore Defendant is liable for the acts of Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, Sgt. Nathaniel Vitals and others as outlined herein.

165. As a further result of Defendant's negligence outlined herein Defendant, Chief Bruce Caldwell, Lt. Patrick Lollie, Sgt. James Jackson, a Sgt. Nathaniel Vitals and others have committed various torts against Plaintiff.

166. Plaintiff seeks unliquidated damages within the jurisdictional limits of this court.

167. Defendants unlawful conduct complained of by Plaintiff herein was done with malice or reckless indifference to the rights of Plaintiff which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section §41.003(a).

168. Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

## VIII. Count Eight – Violations of 42 U.S.C. §1983 in San Jacinto College

169. Defendant has violated 42 U.S.C. §1983, in that Plaintiff has been, under color of any statute, ordinance, regulation, custom, or usage, subjected to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, and is liable to Plaintiff for Plaintiffs' actual damages, attorney's fees, prejudgment interest and costs.

## INJUNTIVE RELIEF

170. Plaintiff restates, realleges, and hereby incorporates by reference any and all allegations referenced above, inclusive, herein. In addition, Plaintiff alleges that Defendant's discriminatory actions outlined herein must be enjoined by this Court in order to force Defendant to comply with the law. It is suggested that

the injunction be specific in enjoining Defendant and its' employees, agents and representatives.

171.  Plaintiff also asks the Court to order Defendant by and through Chief Bruce Caldwell or whoever is then serving as Chief of the San Jacinto Police Department, to award Plaintiff an honorable designation on her Texas Commission on Law Enforcement Separation of Licensee (F-5) Form through the Texas Commission of Law Enforcement.

172.  That this Court retain jurisdiction for five (5) years to make sure Defendant is complying with the law.

## **DEMAND FOR A TRIAL BY JURY**

173.  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action. See also: U.S. Const. Amend. 7. In accordance with the Federal Rules, this jury demand is being filed with the Clerk of the United States District Court for the Southern District of Texas, Houston Division as required by Fed. R. Civ. P. 5(d) and Fed. R. Civ. P. 38(b).

## **DAMAGES**

174.  Defendant is jointly and severally liable for the violations complained of herein through direct participation, condoning such behavior, and/or omission. Plaintiff has suffered damages as a result of these violations and complaints as follows:

a.  For appropriate declaratory relief regarding the unlawful and unconstitutional acts and practices of the Defendants.

b.  Compensatory damaged for Plaintiff's wrongful termination including but not limited to loss of wages and benefits within the meaning of 29 U.S.C. §2617(a) in an amount to be proved at trial but thought to exceed $200,000. These losses included, but are not limited to lost wages and benefits from the date of termination, back pay, and interest.

c.  Court costs and attorney's fees the Plaintiff has incurred under 29 U.S.C. § 2617(a).

d.  Compensatory and punitive damages for sex, religious, hostile work environment, and retaliation violations of law.

e.  Court costs and attorney's fees the Plaintiff has incurred under 29 U.S.C.A. §794a.

f.  Compensatory and punitive damages under Tex. Labor Code Ann. §21.2585.

g.  Injunctive and equitable relief under Tex. Labor Code Ann. §21.258 including reinstating Plaintiff to Honorable discharge status under the laws of the State of Texas.

h.  Exemplary and punitive Damages from the named defendants as individuals for engaging in unlawful discrimination and retaliation, and to

deter such actions and/or omissions in the future because the acts complained of herein were committed with malice and/or reckless indifference to the protected rights of Santa Hafizee.

## **PRAYER FOR RELIEF**

175. Wherefore, premise considered, Plaintiff, Santa Hafizee, respectfully prays this Court as follows:

    a. Defendant be summoned to appear and answer herein;

    b. Issue findings of fact and conclusions of law that Defendant's acts, practices, and procedures, subjected Plaintiff to Religious Discrimination, Sex Discrimination, Harassment, Hostile Work Environment and Retaliation as complained of herein violated Plaintiff's rights as secured under Title VII, and or like state statutes:

    c. Grant to Plaintiff a permanent injunction enjoining Defendant, its officers, agents, successors, employees, attorneys, assigns and other representatives, and all those acting in concert; or participation with them and at their direction, from engaging in any employment policy or practice shown to discriminate against Plaintiff in violation of Title VII on the basis of sex, religion, hostile work environment, retaliation and or like state statutes;

d. Grant to Plaintiff a judgment for damages, for, sex discrimination, religious discrimination, harassment, hostile work environment, retaliation, against Defendant in an amount of $300,000.00 at the time of filing;

e. Grant Plaintiff a judgment for damages due to Defendant's Wrongful Termination from serving as a peace officer at not only the San Jacinto Police Department but through the actions of the Defendant, at any law enforcement agency in the region, in an amount of $300,000.00 at the time of filing;

f. Grant Plaintiff a judgment for damages due to Defendant's Negligence in an amount of $500,000.00 at the time of filing;

g. Retain jurisdiction over this action to assure full compliance with the orders of this Court and with applicable law;

h. Award Plaintiff a judgment for her damages for pain and suffering, mental anguish and for the humiliation caused by Defendant's unlawful treatment in the amount of $1,000,000.00 or more;

i. Plaintiff prays for an award of punitive damages in an amount believed by the court to be appropriate to punish Defendant for the willful and malicious misconduct and necessary to deter Defendant from engaging in such misconduct in the future, in the amount of $5,000,000.00 or more;

j. Plaintiff prays that the Court award Plaintiff costs and expenses of this action and award Plaintiff reasonable attorney fees as provided in Title VII 42 U.S.C.A. §2000e, et. seq.; 42 U.S.C. §1981; 42 U.S.C. §1983; Texas Civil Practice & Remedies Code Chapter 38.001(8), Chapter 21 of the Texas Labor Code and or like state statutes;

k. Plaintiff, in accordance with her rights under the United States and Texas Constitutions, and statutory rights under Title VII 42 U.S.C. §2000e-5(k); and or like state statutes demands a trial by jury on issues triable to a jury;

l. Pre-judgment interest accruing at the rate of Six per cent (6%) per annum from August 11, 2016 until the date of judgment;

m.    Post-judgment interest at the rate of Eighteen per cent (18%) per annum or at the highest legal or contractual rate allowed by law from the date of judgment until the judgment is paid;

n. Judgment in the amount of Seventy Five Thousand Dollars ($75,000.00) as initial attorney's fees plus additional attorney's fees when incurred in prosecution of this lawsuit, if Defendant does not appeal this judgment this to the Fifth Circuit Court of Appeals and time for appeal to that court has expired, Defendant shall be entitled to a remittitur of Five Thousand Five Hundred Dollars ($5,500.00), against the judgment for attorney's fees; and if Defendant does not appeal from the Court of Appeals to the

NAV

Supreme Court of the United States and time for that appeal has expired,

Defendant shall be entitled to a remittitur of Four Thousand Five Hundred

Dollars ($4,500.00) against the judgment for attorney's fees;

o. All costs of court;

p. All expert witness fees incurred in the preparation and prosecution of this
action;

q. All court reporter fees incurred in the preparation and prosecution of this
action;

r. Plaintiff be granted all writs necessary to enforce the judgment of this
Court; and

s. Plaintiff be awarded such other, further, and different relief as the nature
of the case may require or as may be determined to be just, equitable, or
proper by the Court.

Respectfully submitted,

By: /s/ Robin E. McIlhenny
Attorney-in-charge: Robin E. McIlhenny
Texas Bar No. 24072992
U.S. D.C., SD TX: 1552147
robin@hcdo.com
5100 Westheimer Rd. Suite 105
Houston, Texas 77056
P: (713) 854-2268
F: (281) 205-0426
*Attorney for Plaintiff*

**OF COUNSEL:**

John Thomas Foster
Texas Bar No. 24059770
U.S. D.C., SD TX: 1074762
5100 Westheimer Rd. Suite 105
Houston, Texas 77056
P: (713) 854-2268
F: (281) 205-0426
***Attorney for Plaintiff***